## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

N.C., a minor by her parents and next friends,      *
J.C. and Ni.C.

                                                  *

       and

                                                  *

J.C. and Ni.C., individually, and on
behalf of N.C.                                          *

       Plaintiffs,                            *

                                                       Civil Action No.:

       v.                                    *

Board of Education of Baltimore County    *
6901 N. Charles Street
Towson, Maryland 21204                 *
Serve on:  Tiara D. Booker-Dwyer

                                                  *

       and

                                                  *

Dr. Myriam Rogers (Yarbrough)
Superintendent of Schools                *
Baltimore County Public Schools
6901 N. Charles Street                   *
Towson, Maryland 21204

                                                  *

       and

                                                  *

Allison Myers, individually and in her official capacity
Executive Director of Special Education    *
Baltimore County Public Schools
105 W. Chesapeake Avenue           *
Towson, Maryland 21204

                                                  *

       and

                                                  *

Jason Miller, individually and in his official capacity
Coordinator of Compliance              *
Baltimore County Public Schools
105 W. Chesapeake Avenue           *
Towson, Maryland  21204

                                                  *

       Defendants

*      *      *      *      *      *      *      *      *      *      *      *      *      *

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiffs, by and through their attorney, Mark B. Martin and the Law Offices of Mark B. Martin, P.A., and respectfully unto this Honorable Court states as follows:

1. This is a civil action pursuant to the Individuals with Disabilities Education Act ("IDEA,") 20 U.S.C. §§ 1400 *et seq.* and 34 Code of Federal Regulations (C.F.R.), §§ 300.1 *et seq.*; the Education Article, Maryland Annotated Code §§ 8-401 *et seq.* and the Code of Maryland Regulations (COMAR) §§ 13A.05.01 *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and 42 U.S.C. § 1983.

2. Plaintiffs, individually and on behalf of their daughter, N.C. file this action as a result of the failure of the Defendants, the  Board of Education of Baltimore County ("Board" or "BCPS") also known as Baltimore County Public Schools (collectively "BCPS") to offer N.C. a free appropriate public education ("FAPE") for 2023-2024 school year.  As such, J.C. and Ni.C. seek a judgment finding that BCPS failed to offer N.C. a FAPE for 2023-2024 school year due to both procedural and substantive violations of the IDEA, Section 504 of the Rehabilitation Act of 1973 and state education law.

3. This is also a civil action to order the Defendants to comply with the 'stay-put' provision of the IDEA, by maintaining the student in her current educational placement, The Legacy School ("Legacy.")  Plaintiffs are requesting an order that BCPS comply with the procedural requirements of the IDEA and do all things necessary to effectuate the 'stay-put' mandate and maintain N.C.'s current educational placement at Legacy by resuming direct responsibility for payment to the school and reimbursement to the parents for tuition, related services, costs and expenses for N.C. to attend Legacy during administrative and judicial

review in accordance with 20 U.S.C. § 1414(j); 34 C.F.R. § 300.518; C.O.M.A.R. § 13A.05.01.15C(19).

4. Plaintiffs seek payment for the tuition, costs, expenses, and related services costs incurred during the period of time when Defendants violated the procedural and substantive requirements of the IDEA when they failed to comply with the 'stay-put' requirements of the IDEA.

## JURISDICTION

5. This Court has jurisdiction over this matter pursuant to the Individuals with Disabilities Education Act ("IDEA") as amended in 2004, 20 U.S.C. § 1401 *et seq.*; 34 C.F.R. § 300.1 *et seq.*; 28 U.S.C. § 1331, 42 U.S.C. § 1983; Md. Educ. Code Ann., § 8-401 *et seq.*; C.O.M.A.R. § 13A.05.01, *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Americans with Disabilities Act of 1990 ("ADA.")

6. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

8. Plaintiff, N.C., is a ten (10) year old (DOB: 7/13/13) child with a qualified disability.  At all relevant times, she has been, and is now, a resident of Baltimore County, Maryland.

9. Plaintiffs, J.C and Ni.C. (hereinafter collectively referred to as the "Plaintiffs" or "Parents") are the next friends and parents of N.C. At all relevant times, they have been and are now, residents of Baltimore County, Maryland.  As N.C.'s parents and next friends, the Parents bring this action on N.C.'s behalf and in their own right.

10. Defendant, The Board of Education of Baltimore County ("Board" or "BCPS") is an elected body duly authorized and empowered by the authority of the laws of the State of Maryland,

to establish, maintain, operate, and administer a system of public schools within Baltimore County, Maryland known as the Baltimore County Public Schools.

11. Defendant, BCPS, receives federal funds pursuant to the IDEA, to ensure access to a FAPE to all children with disabilities through twenty-one (21) years of age and is obligated to comply with applicable federal regulations and statutes including, but not limited to, the IDEA and state education law.

12. Defendant, BCPS is a local education agency ("LEA") as defined by 20 U.S.C. § 1401 and as such receives financial assistance from the United States Department of Education and is responsible for providing a FAPE to disabled students residing in Baltimore County, Maryland.

13. Defendant, Dr. Myriam Rogers is superintendent of the Baltimore County Public Schools. As such, and pursuant to lawfully delegated authority, she is responsible for overseeing and administering educational services, including special education services, to all students living within Baltimore County. As superintendent, Defendant Rogers is ultimately responsible for ensuring that students with disabilities in the LEA and their parents are treated in compliance with state and federal laws. She is being sued in her official capacity.

14. Defendant, Allison Myers is the Executive Director of the Special Education within the Department of Special Education of the Baltimore County Public Schools. As such, she is responsible for ensuring that the identified needs of students with disabilities are met and that all appropriate guidelines and regulations are followed. Defendant Myers, upon information and belief, has also made direct decisions regarding N.C.'s educational programming and placement. She is being sued in her official and individual capacity.

15.  Defendant, Jason Miller, is the Coordinator of Compliance for Baltimore County Public Schools.  As such, he is also responsible for ensuring that the identified needs of students with disabilities are met and that all appropriate guidelines and regulations are followed. Defendant Miller has also made direct decisions regarding N.C.'s educational programming and placement.  He is being sued in his official and individual capacity.

## FACTUAL ALLEGATIONS

16. Plaintiff, N.C. is diagnosed with specific learning disabilities with impairments in reading (dyslexia,) and writing, and attention deficit/hyperactivity disorder, combined presentation. N.C. is an individual with a qualified disability within the meaning of all applicable statutes, including the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. §§ 1400-1461; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and Md. Educ. Code Ann., § 8-401 *et seq.*

17. N.C. has been identified as eligible for special education and related services under the IDEA by BCPS as a student with a specific learning disability.

18. N.C. and her parents contend this is an error impacting the development of her IEP and she qualifies as a student with Multiple Disabilities.

19. N.C.'s zoned public school is Wellwood International School ("Wellwood") in Baltimore County.

20. N.C. attended Legacy for her second-grade year (2020-2021,) her third-grade year (2021-2022 school year,) and her fourth-grade year (2022-2023 school year) funded by BCPS.

21. N.C. has remained a student at Legacy at public expense.  Legacy is a private special education day school for students with dyslexia and other language-based learning differences.

22. It is a program that emphasizes individualized multi-sensory academic instruction that integrates the Orton-Gillingham method and philosophy throughout the day.  The Orton-Gillingham approach is a highly structured multi-sensory literacy program.

23. BCPS acquired N.C.'s educational performance information, observed her in her educational setting at Legacy and developed IEPs for each of those school years.

24. Defendants regularly fund Baltimore County Public School students at Legacy as part of the special education continuum required by the IDEA.

25. On March 15, 2022, the Wellwood IEP team concluded that, due to her deficits, N.C. required multisensory instruction throughout her day and approved an IEP for N.C. that included placement at a private sperate day school as N.C's least restrictive environment ("LRE") for the 2022-2023 school year.

26. For the 2022-2023 school year, BCPS directly funded Legacy by paying one lump sum to Legacy at the beginning of the 2022-2023 school year for the full cost of tuition, the administrative fees, the technologies and all fees and costs for counseling services and transportation.  The only cost BCPS paid monthly to Legacy was for speech services.

27. In addition to assuming direct responsibility for the cost of placement, BCPS continued its educational oversight role during the 2022-2023 school year, including reviewing the student's progress and conducting observations and evaluations of the student.

28. In January of 2023, psychoeducational testing revealed that N.C. had an above average IQ of one hundred eighteen (118) and a processing speed in the superior range at one hundred

thirty-five (135.)  In contrast, N.C.'s academic achievement scores for reading and writing were in the high seventies (70's) and low eighties (80's) with spelling at a standard score of sixty-nine (69.)  Thus, N.C was independently reading at a first-grade level, and her reading and writing, the building blocks of all academic achievement, were at or were approaching four (4) standard deviations below her cognitive ability.

29.  Due to these complex deficits, N.C. continues to require a highly structured, evidence-based multi-sensory literacy program throughout her day, which Legacy provides.

30. N.C. also has a history of anxiety, which is well-managed at Legacy with a low teacher-to-student ratio that provides significant adult support as well as a highly structured and predictable schedule.  Legacy also provides her with adult support for transitions throughout the day and when the schedule deviates from the structured and predictable schedule Legacy provides.  Legacy also provides N.C. with weekly counseling lessons in stress management.

31. Beginning in November 2022, BCPS convened a series of IEP meetings to review and revise N.C.'s IEP for 2023-2024 school year.

32. On March 8, 2023, BCPS offered an IEP that failed to provide appropriate goals in writing, reading, social emotional skills, and mathematics and the necessary and recommended supplementary aids and accommodations. BCPS significantly reduced N.C.'s special education services and changed N.C.'s LRE from a full day of special education in a private separate day school for the 2022-2023 school year to only nine (9) hours outside of general education for the 2023-2024 school year.

33. Due to their disagreement with the IEP and placement offered by BCPS for N.C.'s fifth grade year, the Parents rejected the IEP offered by BCPS for the 2023-2024 school year.

## PROCEDURAL AND FACTUAL HISTORY

34. On April 28, 2023, Plaintiffs filed a request for a due process hearing with Baltimore County Public Schools and the Maryland Office of Administrative Hearings ("OAH") as a result of the procedural and substantive failures of BCPS in formulating and offering an IEP and placement for the 2023-2024 school year.

35. As part of the April 28, 2023, due process request, Plaintiffs invoked N.C.'s right to remain in her current educational placement also known as 'stay-put' and requested that BCPS maintain N.C.'s current educational placement at Legacy during the pendency of the current due process proceedings.

36. Contrary to established law, BCPS did not file an Answer until June 13, 2023.

37. Before the start of the 2023-2024 school year, Legacy sent an invoice to BCPS for the cost of tuition and other education related costs as it had the previous year.  BCPS knowingly and intentionally refused to pay the invoice.

38.  Instead, as a result of the parents filing a due process request and invoking their procedural safeguards pursuant to 20 U.S.C. § 1414(j), 34 C.F.R. § 300.518, and C.O.M.A.R. § 13A.05.01.15C(19), BCPS changed its terms of payment to Legacy from annual to monthly payments instead of paying in one lump sum as it had previously paid for N.C. and as it pays for other BCPS funded students.

39. Legacy did as BCPS requested.  In late August 2023 and late September 2023, BCPS submitted to Legacy payment for approximately two (2) months of N.C.'s tuition and education related costs totaling Eight Thousand Three Hundred Eighty Five Dollars and No Cents ($8,385.00).

40. Concerned about the adverse action taken by BCPS, Plaintiffs contacted BCPS.  On August 15, 2023, Defendant's counsel sent an email to Plaintiff's counsel stating, "[a]s I stated on the phone this evening, BCPS fully intends to honor its obligation to fund the student's placement at the Legacy School pursuant to the stay put provision of the IDEA. **Stay put remains in place pending resolution of the administrative and judicial proceedings**. *See, email to Mark B. Martin from Pamela Foresman, dated August 15, 2023, attached as Exhibit 1.  Emphasis added.*

41. On or about September 10, 2023, J.C. submitted invoices to BCPS for payment of related services of transportation in accordance with the procedures established by Defendant Jason Miller, Director of Office of Compliance.

42. When the invoices were not reimbursed, J.C. contacted Defendant Miller on multiple occasions to try and resolve the failure of BCPS to comply with the procedural safeguards of the IDEA.

43. The merits of the April 28, 2023 request for a due process hearing were litigated at OAH in *N.C. v. Baltimore County Public Schools,* docketed as OAH Case No.: MSDE-BCNY-OT-23-11251 in late August and the first two (2) weeks of September 2023.

44.  On October 10, 2023, OAH issued its decision denying Plaintiff's request that BCPS fund N.C.'s placement at Legacy for the 2023-2024 school year.

45. Defendants knowingly and intentionally delayed payments to J.C. and Ni.C.  On December 8, 2023, Defendant Miller advised J.C. that BCPS would no longer comply with the 'stay-put' requirements of the IDEA because the administrative law judge did not rule in Plaintiff's favor.

46. It is well established law that the procedural safeguards established by 20 U.S.C. § 1414(j), 34 C.F.R. § 300.518, and C.O.M.A.R. § 13A.05.01.15C(19) do not turn on and off with each administrative and judicial decision but remains in place to maintain the stability of the educational program for the student through appeal to the district and circuit court of appeals. *Wagner v. Board of Educ. of Montgomery County*, 335 F.3d 297, 301 (4th Cir. 2003); *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 126 (3d Cir. 2014).

47. Contrary to well-settled law, Defendants, knowingly, intentionally, and retaliatorily ceased making any further payments to Legacy for tuition, related services, costs, and expenses after October 2023.

48. On December 22, 2023, Defendants advised that they would not be funding the student's placement and related services subsequent to the October 10, 2023 ALJ Decision.

49.  Plaintiffs made numerous attempts to resolve the Defendants' failure to comply with the procedural safeguards established by the IDEA with respect to 'stay-put.'

50. Without providing any case law in support of their actions, BCPS knowingly and intentionally refused to comply with the procedural safeguards established by the IDEA.

51. As of February 6, 2024, BCPS was failing to comply with the procedural safeguards of the IDEA by failing to do all things necessary to effectuate and maintain N.C.'s 'stay-put'/current educational placement at Legacy such as paying the tuition, costs and expenses that are due.

52. By their conduct as alleged herein, Defendants are deliberately indifferent to and acted in bad faith, with malice and reckless disregard and gross misjudgment regarding the rights of the Parents and the Student.

53. As a result of their actions, Legacy has advised the Pparents that they will be taking adverse action with respect to the Student's education and services because tuition payments have not been made.

54. BCPS funds many students at the Legacy School and has refused to pay for the tuition and related services for N.C. because Plaintiffs are pursuing their case against the school system.

55. ALJ Gresock's decision contains mistakes of law and fact and is contrary to the evidence for reasons including, but not limited to, the following:

   a. The OAH decision was erroneous because the ALJ erroneously concluded the IEP developed for N.C. for the 2023-2024 school year was reasonably calculated to provide N.C. with a Free Appropriate Public Education.

   b. The hearing and decision were irregularly made.

   c. ALJ Gresock erred by holding Plaintiffs to the wrong legal standard.

   d. The ALJ denied Plaintiffs their right and opportunity to present their case.

   e. The ALJ erred by refusing to order BCPS to provide current contact information for a BCPS teacher who refused to comply with the timely issued subpoena.

   f. The ALJ erred by prohibiting appropriate and probative examination of witnesses by Plaintiffs and unduly restricting their opportunity to examine witnesses.

   g. The ALJ erred by basing her decision on facts either not in evidence or not supported by the evidence.

   h. The ALJ inappropriately discounted Plaintiff's special education expert witness who had direct experience and knowledge of N.C.

   i. The ALJ substituted her own educational opinion instead of deferring to N.C.'s teachers and related service providers.

j.   The ALJ misapplied the standard of Least Restrictive Environment.

k.   The ALJ deferred to the public-school administrators even though they had no factual basis or evidence for their opinions and testimony.

l.   The ALJ overly relied upon Wellwood's assistant principal, Michelle Brennan, who never observed or tested N.C. or had firsthand knowledge of her capabilities.

m.   The ALJ failed to properly apply the facts to the law in rendering her decision.

n.   The ALJ failed to properly apply the law in rendering her decision.

o.   The ALJ failed to make specific findings of fact regarding the specific claims brought by Plaintiffs.

## RELEVANT LAW

## I.  Individuals with Disabilities Education Act ("IDEA") and Maryland State Education Law

56. In order to encourage states to provide appropriate special education services to students with disabilities, Congress enacted what is now called the IDEA, 20 U.S.C. § 1400 et seq. Under the IDEA, states are eligible for funding if they assure that all children with disabilities are provided FAPE.  20 U.S.C. § 11412(1); 34 C.F.R. § 300.101(a).

57. By law, special education must be provided to each eligible student in accordance with the terms of his or her IEP.  20 U.S.C. § 1401(9); 34 C.F.R. § 300.17.

58. The IDEA and its implementing regulations provide for a duly constituted multi-disciplinary team to make recommendations, based on a child's IEP, regarding the student's educational placement.  20 U.S.C. §§ 1412(2)(B)(4), (6); 1414(a) (5); 34 C.F.R. §§ 300.320 and 300.321.

59. The IDEA is designed to ensure that students with disabilities receive effective education which includes challenging expectations.  20 U.S.C. § 1400(C)(5); 20 U.S.C. § 6311(a) and (b).

60. The IDEA also requires that parents be extended due process rights with which to enforce their substantive and procedural rights under the IDEA.  20 U.S.C. § 1415.

61. Once a request for a due process hearing is filed, the IDEA provides that "during the pendency of any proceedings conducted pursuant to this section ... the child shall remain in the then-current educational placement of the child ... until all such proceedings have been completed." 20 U.S.C. § 1415(j).

62. Should the school system eliminate a basic element of the education program, the parent or a student with a disability may invoke the 'stay-put' provision and request a statutory injunction. *See, Johnson v. D.C.*, 839 F. Supp. 2d 173,177 (D.D.C. 20 12.) ("Once a due process complaint has been filed, a parent can invoke the stay-put provision when the school district proposed a change in the child's 'then-current educational placement.'")

63. The 'stay-put' provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy. *See,* e.g., *Honig v. Doe*, 484 U.S. 304, 326 (1988); *Wagner v. Board of Educ. of Montgomery County*, 335 F.3d 297 (4th Cir. 2003); *Bd. of Educ. v. Brett Y*, 959 F.Supp. 705, 709 (D. Md. 1997); *Johnson v. District of Columbia*, 839 F.Supp. 2d 173, 176 (D.D.C. 2012); *Saleh v. District of Columbia*, 660 F.Supp. 212, 215 (D.D.C. 1987); *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005); *King v. Pine Plains Cent. Sch. Dist.*, 918 F.Supp. 772, 783 (S.D.N.Y. 1996).

64. The Fourth Circuit has held that "Section 1415(j) provides simply and unequivocally that the child 'shall remain' in his or her 'then-current education placement' 'during the pendency of any proceedings conducted pursuant to this section.' 20 U.S.C. § 1415(j).  The utility of section 1415(j) is thus easily understood.  It guarantees an injunction that prohibits

a school board from removing the child from his or her current placement during the pendency of the proceedings. The injunction is automatic; the party seeking it need not meet the usual requirements for obtaining preliminary injunctive relief. *See*, *Safety–Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846 (4th Cir.2001)." *Wagner v. Board of Educ. of Montgomery County*, 335 F.3d 297, 301 (4th Cir. 2003).

65. This Court has held that "[w]ithout interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private [sic] placement amounts to no choice at all." *Board of Educ. of Montgomery County v. Brett Y.,* 959 F.Supp. 705, 711 (D.Md.1997).

66. Circuit Courts have held that "It is undisputed that once there is state agreement with respect to the pendent placement, a fortiori, financial responsibility on the part of the local school district follows." *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83-84 (3d Cir.1996).

67. The IDEA provides that "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, [42 U.S.C.A § 1201 *et. seq*.] Title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(l).

## II. Section 504 of the Rehabilitation Act

68. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded

from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794(a).

69. "[E]ither bad faith or gross misjudgment must be shown before a Section 504 violation can be made out...." *Monahan v. Nebraska*, 687 F.2d 1164, 1170-71 (8th Cir.1982).

### III.  42 U.S.C. § 1983

70. Section 1983 creates a cause of action for any person who is deprived of any right, privilege, or immunity secured by the United States Constitution or federal law under color or authority of law.

71. A corporation, such as the Baltimore County Public Schools, may be liable under § 1983 if the governmental body subjects a person to a deprivation of rights or causes a person to be subjected to such a deprivation, i.e. - the violation is pursuant to official corporate policy. *Connickv. Thompson*, 131 S. Ct. 1350, 1359; *See,* also *Hinson ex rel. N.H. v. Merritt Educ.*, 521 F. Supp. 2d 22, 28 (D.D.C. 2007).  A corporation can be held liable for a single decision which results in an illegal deprivation if that decision is made by an individual who "may fairly be said to represent official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (l986).

72. While something more than a mere failure to provide a FAPE must be shown, *Lunceford v. D.C Bd. of Educ*., 745 F.2d 1577, 1580 (D.C. Cir. 1984), an action under § 1983 may be based upon violations of certain procedural safeguards of the IDEA. 20 U.S.C. § 1415; *Walker v. District of Columbia,* 969 F. Supp. 794, 797 (D.D.C. 1997*); Zearley v. Ackerman*, 116 F. Supp. 2d 109, 114 (D.D.C. 2000); *Johnson v. District of Columbia*, 190 F. Supp. 2d 34, 46-47 (D.D.C. 2002).

73. Section 1983 "suppl[ies] the right of action to a plaintiff who has been denied procedural safeguards under Section 1415 [of the Education of the Handicapped Act, the predecessor of the IDEA] and who, as a result thereof, has not received the findings and decision following the impartial due process administrative hearing contemplated by Section 1415." *Conway v. Bd. of Educ. of Northport–East Northport Sch. Dist.*, No. 13 Civ. 5283, 2014 WL 3828383, at *15 (E.D.N.Y. Aug.1, 2014), *quoting Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141 (2d Cir.1983).

74. The United States Constitution mandates that no person shall "be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. V.

## COUNT I

**Plaintiffs First Claim for Relief:**
**Deprivation of Plaintiffs Right to a Free Appropriate Public Education without Due Process of Law**

75. All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full.

76. The IEP and placement offered by BCPS at the conclusion of the IEP process in March 2023 substantively failed to offer N.C. a FAPE by failing to provide an educational program that would provide her with meaningful educational benefits.

77. Defendants have and continue to violate N.C.'s rights to the procedural safeguards of the IDEA thereby denying her a FAPE.

78. Defendants have violated Plaintiff's, N.C., right to a FAPE as a result of their actions.

## COUNT II

**Plaintiffs Second Claim of Relief:
Violation of the IDEA's Stay-Put Provision**

79. All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full.

80. Pursuant to the procedural safeguards of the Individuals with Disabilities Education Act ("IDEA"), local educational agencies must maintain the student's current educational placement during a dispute as follows: "During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then current educational placement of such child."  20 U.S.C. § 1415(j).

81. Baltimore County Public School ("BCPS") has, and is continuing, to violate federal law by refusing to do all things necessary to effectuate and maintain N.C. in her current educational placement, Legacy, as mandated by IDEA's procedural safeguards 'stay-put' provision.

82. Having filed a request for a due process hearing, N.C. is entitled to an automatic preliminary injunction under the IDEA's stay-put provision ordering BCPS to immediately do all things necessary to effectuate and maintain N.C.'s placement at Legacy such as resume payment of tuition, and costs to Legacy.

83. BCPS is obligated to reimburse Plaintiff's for all tuition, expenses and costs incurred by them beginning on April 28, 2023 when they legally invoked their 'stay-put' rights.

84. N.C. is entitled to be maintained in her current educational placement through the pendency of this dispute through judicial proceedings.

## COUNT III

**Plaintiffs Third Claim of Relief:**
**Violation of Section 504 of the Rehabilitation Act**

85. All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full.

86. Defendants have engaged in retaliatory conduct toward N.C. and her parents, for asserting her rights under federal law.

87. Defendants, Rogers, Myers, and Miller, upon information and belief, have knowingly and intentionally refused to comply with 'stay-put' requirements of the IDEA by ceasing tuition payments before the completion of the current litigation filed on April 28, 2023.

88. Defendants, Rogers, Myers, and Miller, upon information and belief, stopped paying the annual invoice for the Legacy School and changed the frequency and timeliness of payments in retaliation for the parents filing for due process.

89. Plaintiff requests damages, in an amount to be determined at trial, for such actions under, 42 U.S.C. § 1983 and 29 U.S.C. § 794 and reasonable attorney's fees pursuant to 42 U.S.C. § 1988. 29.

## COUNT IV

**Plaintiffs Fourth Claim of Relief:**
**Damages Under 42 U.S.C. § 1983**

90. All previous allegations, as necessary to support this cause of action, are incorporated into this cause of action by reference as if set forth in full.

91. Defendants have refused to comply with the procedural safeguards of the IDEA and maintain N.C. at Legacy even though BCPS is required to fund N.C.'s current educational placement through any judicial proceeding.

92.  Defendants, Rogers, Myers, and Miller, upon information and belief, have knowingly and intentionally refused to comply with the 'stay-put' requirements of the IDEA by ceasing tuition payments before the completion of the current litigation filed on April 28, 2023.

93.  Defendants, Rogers, Myers, and Miller, upon information and belief, have stopped paying the annual invoice for the Legacy School and changed the frequency and timeliness of payments in retaliation for the parents filing for due process.

94. Defendants' deliberate indifference, bad faith and gross misjudgment with respect to their refusal to comply with the procedural safeguards guaranteed by Congress for the purpose of depriving N.C. of special education services necessary to provide her with free appropriate public education constitute the deprivation of a right guaranteed under federal law within the meaning of § 1983.

95. Defendants have acted with deliberate indifference, bad faith and gross misjudgment by refusing to comply with the procedural safeguards of the IDEA and maintaining N.C.'s current educational placement.

96. Defendants violated § 1983 by directly and proximately causing the deprivation of N.C.'s constitutional rights by systematically depriving Plaintiffs of their rights under the IDEA.

97.  Defendants have acted with deliberate indifference, bad faith and gross misjudgment with respect to N.C.'s legal rights pursuant to Federal and State education law.

98. As a direct and proximate cause of Defendants' acts, Plaintiffs have suffered and continue to suffer severe and grievous mental and emotional suffering, worry, fear, anguish, anxiety, humiliation, intimidation, stigma, and other injuries that they will continue to suffer permanently.

99. Plaintiffs request damages, in an amount to be determined at trial, for such actions under

the Act, 42 U.S.C. § 1983 and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs, N.C., individually, and J.C. and Ni.C. individually and as the parents and next friends of a minor, N.C., respectfully request that this Honorable Court issue judgment in favor of the Plaintiffs and against Defendants and Plaintiffs pray for the following relief:

1. Order BCPS to do all things necessary to effectuate and maintain N.C's current educational placement at Legacy such as immediately resuming direct responsibility for the Legacy tuition and related services in accordance with her procedural safeguards;

2. Order Defendants to reimburse Plaintiffs for any and all tuition, related services and expenses incurred or paid to Legacy for the 2023-2024 school year;

3. Order that BCPS has denied N.C. a FAPE for the 2023-2024 school year;

4. Award One Hundred Thousand Dollars ($100,000.00) in compensatory damages;

5. Award Plaintiff's attorney fees, expert fees and costs of this action; and

6. Award any other relief that the Court deems just and proper.

Respectfully submitted,

*Mark B. Martin*

Mark B. Martin, Fed. Bar No. 11688
Law Offices of Mark B. Martin, P.A.
36 S. Charles Street, Suite 901
Baltimore, Maryland  21201
T: (410) 779-7770
F: (410) 576-9391
mmartin@markmartinlaw.com
*Counsel for Plaintiffs*

February 6, 2024