IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **N.C., a minor by her parents and next friends, J.C. and Ni. C.,** *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No.: 1:24-cv-00367-JRR |
| **BOARD OF EDUCATION OF BALTIMORE COUNTY,** *et al.*, | |
| *Defendants*. | |

### MEMORANDUM OPINION

Plaintiffs N.C., a minor by her parents and next friends, J.C. and Ni. C., as well as J.C. and Ni. C., individually, initiated this action against Defendants Board of Education of Baltimore County (the "Board"), Dr. Myriam Rogers in her official capacity as Superintendent of Baltimore County Public Schools ("BCPS"), Allison Myers individually and in her official capacity as Executive Director of Special Education with BCPS, and Jason Miller individually and in his official capacity as Coordinator of Compliance with BCPS. Plaintiffs assert claims for violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*, and 42 U.S.C. § 1983. (ECF No. 16; the "Amended Complaint.") Pending before the court is Defendants Rogers, Myers, and Miller's (the "Individual Defendants") Motion to Dismiss the Amended Complaint. (ECF No. 18; the "Motion.")[1] The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

---

[1] Defendants previously filed a motion to dismiss at ECF No. 10. In view the filing of Plaintiffs' Amended Complaint (ECF No. 16), that motion will be denied as moot.

I. **BACKGROUND**[2]

Plaintiffs initiated the instant action "as a result of the failure of the [Board] to offer N.C. a free appropriate public education ("FAPE") for [the] 2023-2024 school year," and for failure "to comply with the 'stay-put' provision of the IDEA, by maintaining [N.C.] in her current educational placement." (ECF No. 16 ¶¶ 2–3.)

**A. N.C.'s Individualized Education Program and Schooling**

N.C. is an 11-year-old[3] child with a qualified disability, including "specific learning disabilities with impairments in reading (dyslexia) and writing, and attention deficit/hyperactivity disorder, combined presentation." *Id.* ¶ 16. The Board identified N.C. "as eligible for special education and related services pursuant to the IDEA." *Id.* ¶ 17. Accordingly, the Individualized Education Program ("IEP") team at Wellwood International School, N.C.'s zoned public school, approved an IEP for N.C. that included placement, at the Board's expense, at the Legacy School ("Legacy") as N.C.'s "least restrictive environment" ("LRE") for the 2020-2021, 2021-2022, and 2022-2023 school years. *Id.* ¶¶ 20, 25–26. Legacy is "a private special education day school for students with dyslexia and other language-based learning differences." *Id.* ¶ 22.

For the 2022-2023 school year, the Board paid a lump sum to Legacy at the beginning of the school year to cover tuition, administrative fees, and all fees and costs for counseling services and transportation, as well as a monthly sum to Legacy for N.C.'s speech services. *Id.* ¶ 26. In November of 2022, the Board convened a series of IEP meetings to review N.C.'s IEP for the following school year. *Id.* ¶ 31. Subsequently, in January of 2023, "psychoeducational testing revealed that N.C. had an above average IQ of one hundred eighteen (118) and a processing speed

---

[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 16.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).
[3] N.C. was 10 years old at the time of the filing of the Amended Complaint. (ECF No. 16 ¶ 8.)

in the superior range at one hundred thirty-five (135)." *Id.* ¶ 28. Thereafter, on March 8, 2023, the Board "offered an IEP that failed to provide appropriate goals in writing, reading, social emotional skills, and mathematics and the necessary and recommended supplementary aids and accommodations," "significantly reduced N.C.'s special education services," and "changed N.C.'s LRE from a full day of special education in a private separate day school for the 2022-2023 school year to only nine (9) hours outside of general education for the 2023-2024 school year." *Id.* ¶ 32. Due to their disagreement with the proposed IEP and placement, J.C. and Ni. C. rejected the offered IEP for the 2023-2024 school year. *Id.* ¶ 33.

### B. Administrative Proceedings

On April 28, 2023, following their rejection of the offered IEP, Plaintiffs filed a request for a due process hearing with BCPS and the Maryland Office of Administrative Hearings ("OAH"), invoking N.C.'s right to remain in her current educational placement (a "stay-put"). (ECF No. 16 ¶ 34.) In response to Plaintiffs actions, "[the Board] changed its terms of payment to Legacy from annual to monthly payments instead of paying in one lump sum as it had previously paid for N.C. and as it pays for other BCPS funded students," and "continues to fail to pay for the related service of transportation." *Id.* ¶ 38. Plaintiffs contend that Defendants Myers and Miller engaged in such conduct as part of a pattern and practice injurious to students who pursue due process hearings or judicial reviews thereof. *Id.* ¶ 39. Despite assurances that the Board would "honor its obligation to fund" N.C.'s placement at Legacy and that N.C.'s stay put would remain intact pending the outcome of the administrative processes, "Defendants failed to timely pay the student's invoice for school resulting in adverse educational action." *Id.* ¶¶ 41–42. Moreover, J.C. submitted invoices to the Board for payment of transportation-related services pursuant to procedures set

3

forth by Defendant Miller, but the invoices were not reimbursed. *Id.* ¶¶ 43–44. "Defendant Miller knowingly and intentionally delayed reimbursement to J.C." *Id.* ¶ 45.

In August and September 2023, an Administrative Law Judge ("ALJ") with OAH convened a due process hearing. *Id.* ¶ 46. On October 10, 2023, OAH denied Plaintiffs' request that the Board fund N.C.'s placement at Legacy for the 2023-2024 school year. *Id.* ¶ 47; *N.C. v. Baltimore County Public Schools*, OAH Case No.: MSDE-BCNY-OT23-11251. Plaintiffs contend that the ALJ's decision was erroneous for myriad reasons. *Id.* ¶ 61. In light of the ALJ's ruling, Defendant Miller informed J.C. that the Board would no longer maintain N.C.'s placement at Legacy. *Id.* ¶ 48. Plaintiffs allege that "Defendants, knowingly, intentionally, and retaliatorily have failed to make all payments to Legacy and the Plaintiffs for tuition, related services, costs, and expenses after October 2023." *Id.* ¶ 51. Moreover, because tuition payments have not been made by the Board, Legacy has advised J.C. and Ni. C. that it "will be taking adverse action with respect to the [N.C.'s] education and services." *Id.* ¶ 57.

### C. Procedural History

Plaintiffs initiated this action on February 6, 2024. (ECF No. 1.) In Plaintiffs' Amended Complaint, they assert the following claims:

> **Count I**: Deprivation of Plaintiff's Right to FAPE without Due Process of Law (an IDEA claim) against the Board;
>
> **Count II**: Violation of the IDEA's Stay-Put Provision against the Board and Individual Defendants in their Official Capacities;
>
> **Count III**: Violation of Section 504 of the Rehabilitation Act against Individual Defendants in their Individual and Official Capacities; and
>
> **Count IV**: Damages under 42 U.S.C. § 1983 against Individual Defendants in their Individual Capacities.[4]

---

[4] Although Plaintiffs state that Count IV is against Individual Defendants solely in their individual capacities, this action was not brought against Defendant Rogers in her individual capacity. (ECF No. 16.)

4

(ECF No. 16. ¶¶ 81–112.) Individual Defendants then filed the instant Motion. (ECF No. 18.)

## II.   LEGAL STANDARD

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations,*

*LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. ANALYSIS

Individual Defendants seek dismissal of all counts against them. They argue that Count II, which is asserted against them in their official capacities, must be dismissed because it is redundant where their employer, the Board, is subject to suit. (ECF No. 18-1 at p. 4.) They seek dismissal of Count III on multiple bases, including that there is no individual liability under Section 504, that Plaintiffs failed to exhaust their administrative remedies with respect to the Section 504 claim, and that a claim for 42 U.S.C. § 1983 damages may not be predicated on a Section 504 violation. *Id.* at p. 5–7. Finally, they argue that Count IV must be dismissed because Plaintiffs are not entitled to damages under § 1983 based on an alleged violation of the IDEA. *Id.* at p. 7–8.

#### A. Count II: IDEA Claim against Individual Defendants in their Official Capacity

Relevant to Individual Defendants' argument that Count II should be dismissed based on redundancy of Plaintiffs' claim against the Board (ECF No. 18-1 at p. 4), this court has noted:

> The Supreme Court has explained that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In contrast, official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (citation omitted); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Huggins v. Prince George's Cty.*, 683 F.3d 525, 532 (4th Cir. 2012); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). The *Graham* Court also said, 473 U.S. at 166: "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." (Emphasis in *Graham*).

*Compton v. Maryland*, No. CV ELH-19-804, 2019 WL 6618659, at *5 (D. Md. Dec. 5, 2019).

Accordingly, "[w]hen [claims] against individual defendants would be duplicative of those against a government entity, which is also sued, the claims against the individuals should be dismissed as the government entity is the real party in interest." *Y.B. v. Bd. of Educ. of Prince George's Cnty.*, 895 F. Supp. 2d 689, 698–99 (D. Md. 2012) (quoting *Blunt v. Lower Merion Sch. Dist.,* 559 F.Supp.2d 548, 568 (E.D. Pa. 2008)). That said, "that 'dismissal' of a duplicative claim 'is not required.'" *Jennings v. Frostburg State Univ.*, No. CV ELH-21-656, 2021 WL 5989211, at *10 (D. Md. Dec. 16, 2021) (quoting *Duncan v. Prince George's Cnty*, PX-18-1378, 2018 WL 6621503, at *3 (D. Md. Dec. 18, 2018)). Importantly, this court has opined that "[w]here 'alleged violations of a plaintiffs' rights occurred because of specific individuals,' permitting suit against individuals in their official capacities provides 'a certain level of public accountability.'" *Duncan*, 2018 WL 6621503, at *3 (quoting *Chase v. City of Portsmouth*, 428 F. Supp. 2d 487, 489–90 (E.D. Va. 2006)).

Here, Plaintiffs allege that Defendants Myers and Miller "made direct decisions regarding N.C.'s educational programming and placement," and "engaged in a systemic pattern and practice of retaliating against parents who assert their due process rights by knowingly and intentionally failing to provide [] Plaintiffs their 'stay put protections." *Id.* ¶¶ 14–15, 39. Plaintiffs further allege that Defendant Miller "knowingly and intentionally delayed reimbursement to J.C." for N.C.'s transportation services. *Id.* ¶¶ 43–46. In contrast, beyond allegations that generally lump her together with the other Individual Defendants, Plaintiffs do not identify specific actions by Defendant Rogers pertaining to Plaintiffs' claims of harm. (ECF No. 16 ¶¶ 13.)

Because Plaintiffs detail specific alleged actions by Defendants Myers and Miller related to the violations of N.C.'s rights, drawing all reasonable inferences in Plaintiffs' favor, the court

declines to dismiss Count II as against Defendants Myers and Miller at this stage. *See Duncan*, 2018 WL 6621503, at *3. Defendants Myers and Miller are of course free to renew their arguments at the Rule 56 stage, if appropriate. Conversely, in view of the more generalized allegations with regard to Defendant Rogers, the court will dismiss Count II against her as duplicative.

### B. Count III: Section 504 Claim against Individual Defendants

#### 1. *Individual Capacity Claims*

Plaintiffs concede Individual Defendants' assertion that Section 504 does not permit individual capacity claims. *Id.* at p. 5–6; ECF No. 21 at p. 9; *see Moneyhan v. Keller*, 563 F. App'x 256, 258 (4th Cir. 2014) (explaining that the Rehabilitation Act does not authorize suit for monetary damages against defendants in their individual capacities); *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 552 (D. Md. 2019) (same). The court will therefore dismiss Count III as against Defendants Myers and Miller in their individual capacities.[5]

#### 2. *Official Capacity Claims*

Individual Defendants further seek dismissal of Count III on the basis that Plaintiffs failed to exhaust their administrative remedies for Plaintiffs' Section 504 claims and because a claim for damages under 42 U.S.C. § 1983 may not be predicated on violation of Section 504. (ECF No. 18-1 at p. 6–7.)

i. Exhaustion

Pursuant to 20 U.S.C. § 1415, "the IDEA establishes formal procedures for resolving disputes." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 159 (2017). As the Supreme Court has explained:

> To begin, a dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides). See § 1415(b)(6). That

---

[5] This action was not brought against Defendant Rogers in her individual capacity. (ECF No. 16.)

> pleading generally triggers a "[p]reliminary meeting" involving the contending parties, § 1415(f)(1)(B)(i); at their option, the parties may instead (or also) pursue a full-fledged mediation process, see § 1415(e). Assuming their impasse continues, the matter proceeds to a "due process hearing" before an impartial hearing officer. § 1415(f)(1)(A); see § 1415(f)(3)(A)(i). Any decision of the officer granting substantive relief must be "based on a determination of whether the child received a [FAPE]." § 1415(f)(3)(E)(i). If the hearing is initially conducted at the local level, the ruling is appealable to the state agency. See § 1415(g). Finally, a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court. See § 1415(i)(2)(A).

*Id.*

Section 1415(l) of the IDEA "contains two salient features." *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 146 (2023). The first "salient feature" is a "general rule" that "'[n]othing in [IDEA] shall be construed to restrict' the ability of individuals to seek 'remedies' under the ADA or 'other Federal laws protecting the rights of children with disabilities." *Id.* at 146. The second "salient feature" qualifies the "general rule" as follows: ". . . except that before the filing of a civil action under such [other federal] laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted." *Id.* In other words, generally the IDEA does not impair a claimant's entitlement to simultaneous pursuit of other remedies, but IDEA relief must be exhausted first where the scope of the IDEA includes the relief the claimant seeks to pursue through some other legal avenue.

In *Fry*, the Supreme Court held that § 1415(l) "requires that a plaintiff exhaust the IDEA's procedures before filing an action under," relevant here, the Rehabilitation Act, "when (but only when) her suit 'seek[s] relief that is also available' under the IDEA." 580 U.S. at 165. Accordingly, "where the plaintiff seeks relief under . . . § 504 'that is also available under' the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures before pursuing her

claims in federal court." *K.M. by & Through C.M. v. Bd. of Educ. of Montgomery Cnty.*, No. CV PX-17-2759, 2019 WL 330194, at *4 (D. Md. Jan. 25, 2019), *adhered to on denial of reconsideration,* No. 8:17-CV-02759-PX, 2019 WL 3892321 (D. Md. Aug. 19, 2019) (quoting 20 U.S.C. § 1415(l)). To meet the "statutory standard" under section 1415(l), "a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Fry*, 580 U.S. at 165. The determination of whether a plaintiff's suit seeks such relief is made by looking to "the substance, or gravamen, of the plaintiff's complaint." *Id.*

The Supreme Court has also recognized that the limiting language in § 1415(l) applies "*only* to suits that 'see[k] relief . . . also available under' [the] IDEA," and did not apply "where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief . . . [the] IDEA does not provide." *Luna Perez*, 598 U.S. at 147–48. Accordingly, under the holding in *Luna Perez*, "a plaintiff may assert a claim for compensatory damages under . . . Section 504 even if he has not exhausted his administrative remedies under the IDEA." *Coleman v. Prince George's Cnty. Bd. of Educ.*, No. DLB-21-68, 2023 WL 4483594, at *2 (D. Md. June 2, 2023), *aff'd sub nom.*, No. 23-1727, 2024 WL 379971 (4th Cir. Feb. 1, 2024); *see Farley v. Fairfax Cnty. Sch. Bd.*, No. 21-1183, 2023 WL 3092979, at *1 (4th Cir. Apr. 26, 2023) (discussing the *Luna Perez* holding).

Here, Individual Defendants seek dismissal of Count III for failure to exhaust administrative remedies—asserting that Plaintiffs' Section 504 claim seeks redress for the school's failure to provide a FAPE—and, in view of *Fry*, they were obliged to exhaust their remedies under the IDEA. (ECF No. 18-1 at p. 6.) Leaving aside the question of whether exhaustion of such remedies is properly addressed by way of a motion to dismiss, *see Z.W. by & through Warner v. Horry Cnty. Sch. Dist.*, 68 F.4th 915, 921 (4th Cir. 2023) (discussing the possible argument that

"lack of exhaustion under the IDEA is an affirmative defense, which generally cannot be adjudicated via a motion to dismiss"), Individual Defendants' argument is unavailing.

Construing the facts in a light most favorable Plaintiffs, Plaintiffs repeatedly state in their Amended Complaint that their Section 504 claim is based on "retaliatory conduct" against Plaintiffs. (ECF No. 16 ¶¶ 94, 97.) While this certainly relates to the provision of a FAPE under the IDEA, the court is not persuaded at this stage that the "gravamen" of Plaintiffs' Count III is the denial of a FAPE, as opposed to the alleged retaliatory conduct in response to Plaintiffs' efforts to assert their rights under the IDEA. *See Fry*, 580 U.S. at 165, *supra*. Moreover, Plaintiffs seek compensatory damages—importantly, relief available under Section 504, but not the IDEA. *See Luna Perez*, 598 U.S. at 147–48 and *Coleman*, 2023 WL 4483594, at *2–3, *supra*. The court will therefore deny the Motion to the extent it seeks dismissal of Count III as against Individual Defendants in their official capacities.

      ii. <u>42 U.S.C. § 1983 Claim Predicated on a Section 504 Violation</u>

Individual Defendants further argue that Count III should be dismissed to the extent it seeks an award of damages and attorney's fees pursuant to 42 U.S.C. § 1983 because § 1983 damages may not be predicated on a Section 504 violation. (ECF No. 18-1 at p. 6–7.) In their opposition, Plaintiffs stated that they "erroneously" referenced 42 U.S.C § 1983 under Count III and "consent to the striking of the cite to § 1983 from ¶ 99." (ECF No. 21 at p. 12 n.11.) Accordingly, Plaintiffs' relief under Count III may not include § 1983 damages.

**C. Count IV: 42 U.S.C. § 1983 Claim against Individual Defendants**

Finally, Individual Defendants seek dismissal of Count IV because it fails to state a claim upon which relief can be granted, specifically because "[e]stablished Fourth Circuit precedent" precludes a claim of damages under § 1983 predicated on an alleged violation of the IDEA. (ECF

No. 18-1 at p. 7–8.)  "Because IDEA provides a comprehensive remedial scheme for violations of its own requirements," the Fourth Circuit has held that "parties may not sue under section 1983 for an IDEA violation."  *Sellers by Sellers v. School Bd. Of the City of Manassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998).  However, "[b]y preserving rights and remedies 'under the Constitution,' section 1415(f) [of the IDEA] does permit plaintiffs to resort to section 1983 for *constitutional* violations, notwithstanding the similarity of such claims to those stated directly under IDEA."  *Id.* at 530 (emphasis in original).

Similarly, "[c]ourts in this district have held that plaintiffs may not assert section 1983 claims based on violations of . . . the Rehabilitation Act, on the grounds that [it] create[s] 'a comprehensive remedial scheme.'"  *Harden v. Smythe*, No. CV 24-02018-BAH, 2024 WL 4826365, at *4 (D. Md. Nov. 19, 2024) (quoting *Lewis v. Bd. of Educ. of Kent Cnty.*, Civ. No. JFM-07-955, 2007 WL 2343659, at *1 (D. Md. Aug. 14, 2007)); *see Wilson v. Montgomery Cnty. Bd. of Trustees*, No. PWG-17-2784, 2018 WL 4300498, at *4 (D. Md. Sept. 10, 2018) ("[B]ecause 'the Rehabilitation Act's comprehensive remedial schemes . . . bar identical claims made pursuant to section 1983 involving the same predicate incidents of discrimination,' her § 1983 claim must be dismissed." (citation omitted)); *Gatling v. Carter*, No. CV PX 15-3723, 2017 WL 480756, at *6 (D. Md. Feb. 6, 2017) (quoting *Peter B. v. Sanford*, No. CIV.A. 6:10-767-RBH, 2010 WL 5684397, at *5 (D.S.C. Dec. 6, 2010), report and recommendation adopted, No. C.A. 6:10-CV-00767, 2011 WL 347019 (D.S.C. Feb. 1, 2011)) (same) (citing cases).  Indeed, "each of the federal appellate courts to have considered the question has decided that claims under § 1983 are preempted by the ADA and Rehabilitation Act."  *Fenicle v. Towson Univ.*, No. CV ELH-18-0917, 2018 WL 5885526, at *13 (D. Md. Nov. 8, 2018) (citing cases); *see Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 83 (2d Cir. 2020) ("We conclude that the comprehensive

remedial scheme of the Rehabilitation Act suggests that Congress did not intend that § 1983 be an available remedy.").

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n.3 (1979)).  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  To state a claim under § 1983, Plaintiffs "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Loftus v. Bobzien*, 848 F.3d 278, 285 (4th Cir. 2017) (same).

In view of the foregoing, the question now before the court is whether Plaintiffs adequately allege violation of a right secured by the Constitution or federal law, separate from the IDEA and Section 504, which sets forth its own comprehensive remedial scheme.  The court thus turns to Plaintiffs' allegations in the Amended Complaint.  Beyond references to the IDEA (and possibly retaliation in relation to Plaintiffs' Section 504 claim), Plaintiffs allege as follows with respect to violations of their constitutional rights or other rights under federal law:

> 108. Defendants Rogers, Myers and Miller have violated § 1983 by directly and proximately causing the deprivation of N.C.'s and other similarly situated parents' constitutional rights by systematically depriving Plaintiffs of their rights under the IDEA.

> 109. Defendants Rogers, Myers and Miller have acted with deliberate indifference, bad faith and gross misjudgment with respect to N.C.'s and other similarly situated parents' legal rights pursuant to Federal and State education law.

(ECF No. 16 ¶¶ 108–109.) Even construing these allegations as distinct from the IDEA or Section 504, such vague allegations fail to identify what rights were violated and are thus insufficient to allege a plausible § 1983 claim.[6]

Plaintiffs seem to attempt to clarify that their § 1983 claim is not based on the IDEA: "The gravamen of the § 1983 claim is intentional adverse actions and retaliation, not a denial of a free appropriate public education pursuant to the IDEA."[7] (ECF No. 21 at p. 2 n.2.) Plaintiffs allege retaliatory conduct by Individual Defendants with respect to their Section 504 claim.[8] (ECF No. 16 ¶¶ 94, 97.) Accordingly, because Plaintiffs fail to plead any violation distinct from the IDEA

---

[6] Earlier in their Amended Complaint, Plaintiffs state: "The United States Constitution mandates that no person shall 'be deprived of life, liberty, or property without due process of law.' U.S. CONST. amend. V." (ECF No. 16 ¶ 80.) However, the references to due process rights in Count IV are those related to Individual Defendants retaliating against Plaintiffs for exercising their due process rights under the IDEA, *i.e.*, what is at issue in the Section 504 claim. The court cannot discern whether Plaintiffs intend to invoke the Fifth Amendment as a basis for their § 1983 claims. Notably, Plaintiffs do not reference the Fifth Amendment in their opposition. (ECF No. 21 at p. 14.)

[7] Curiously, Plaintiffs state elsewhere that they have raised the § 1983 claims based on the IDEA and Section 504 of the Rehabilitation Act (in addition to "the constitution"). (ECF No. 21 at p. 13.)

[8] To the extent, Plaintiffs suggest their First and Fourth Amendment rights were violated, this argument is unavailing. Plaintiffs make no such allegations in their Amended Complaint and may not amend their pleading through opposition to the Motion. *See Nat'l Ass'n for Advancement of Colored People v. Bureau of Census*, 382 F. Supp. 3d 349, 377 n.17 (D. Md. 2019) (noting that an opposition to a motion to dismiss "is not a vehicle for amending a complaint"); *Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-CV-3193, 2015 WL 2227928, at *6 (D. Md. May 11, 2015) (explaining that it is "axiomatic" that a complaint may not be amended by briefs in opposition). Moreover, the reasoning set forth in *Fenicle v. Towson University* is compelling:

> [Plaintiff] argues instead that his § 1983 claim is based upon alleged violations of his constitutional rights under the First and Fourteenth Amendments to the United States Constitution, and therefore is not preempted. . . . Although the law supports [Plaintiff's] contention that a § 1983 claim asserting violations of constitutional rights would not be preempted, his Amended Complaint makes no reference to constitutional violations.
>
> For example, Count VI does not mention the First Amendment, the Fourteenth Amendment, due process, or free speech. Instead, Count VI clearly alleges disability discrimination and retaliation, both of which are part of the comprehensive remedial scheme in the ADA and the Rehabilitation Act.

No. CV ELH-18-0917, 2018 WL 5585526, at *13 (D. Md. Nov. 8, 2018) (record citations omitted).

or Section 504, Plaintiffs fail to state a plausible § 1983 claim. *See Sellers*, 141 F.3d at 529 and *Fenicle*, 2018 WL 5885526, at *13, *supra*. The court will therefore grant the Motion as to Count IV.[9]

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 6) will be granted in part and denied in part.


Date: December 23, 2024                                     /s/_____
                                                            Julie R. Rubin
                                                            United States District Judge

---

[9] Even if it were to find Plaintiffs state a § 1983 claim, Count IV as against Defendant Rogers would be dismissed as duplicative for the reasons set forth above. *See Z.G. by & through C.G. v. Pamlico Cnty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 780 (4th Cir. 2018) (holding that, in the context of a 42 U.S.C. § 1983 claim, "[b]ecause a claim against a public official in his official capacity is 'essentially a claim against' the governmental entity that the official represents, the district court correctly dismissed as duplicative the claims against the individual defendants in their official capacities").